JUSTICE WEBER
dissents as follows:
I respect the careful analysis in the opinion which concluded that a judicial member is entitled to the increased benefits only if he or she retired on or after July 1,1991.1 do disagree with the fundamentals upon which the analysis is made. I join in the dissent of Chief Justice J.A. Turnage.
I conclude it is essential to carefully analyze the Act itself. Chapter 664 contained the following words: “Be it enacted by the Legislature of the State of Montana.” This met the enacting requirements of § 5-4-101, MCA. Chapter 664 was approved by the Governor on May 12, 1989. This met the requirements of § 5-4-302, MCA, with regard to approval by the Governor. The result is that the entire Chapter 664 became law on May 12, 1989.
The title to Chapter 664 stated:
AN ACT GENERALLY REVISING THE JUDGES’ RETIREMENT SYSTEM; REALLOCATING THE DISTRIBUTION OF DISTRICT COURT FEES TO MAINTAIN THE ACTUARIAL SOUNDNESS OF THE SYSTEM; INCREASING THE PERCENTAGE OF SALARY USED TO CALCULATE A MEMBER’S SERVICE RETIREMENT ALLOWANCE AFTER 15 YEARS OF SERVICE IN THE SYSTEM; AMENDING SECTIONS 19-5-404, 19-5-502, AND 25-1-201, MCA; AND PROVIDING EFFECTIVE DATES. (Emphasis added.)
In summary the title shows that the Act generally revised the Judges’ Retirement System, reallocated district court fees to maintain actuarial soundness, increased percentage of salary for member’s service retirement allowance after 15 years, amended code sections with regard to fees and finally provided effective dates. The title *514 indicates that the intent of the legislature was to increase the percentage used to calculate a judge’s retirement after 15 years service.
I will next consider the seven sections which make up Chapter 664. Section 1, amended § 19-5-404, MCA, to provide that the portion of the fee for filing a dissolution of marriage and a motion for substitution of a judge shall be transmitted by the clerk of district court to the State. I do point out that § 19-5-404, MCA, includes provisions for the transmission of other fees, none of which were amended. Note that Section 1 became effective July 1, 1989, so that the described fees were transmitted to the State commencing on that date.
Section 2, provided that the same § 19-5-404, MCA, was amended to provide that the State was required to first deposit in the retirement fund an amount equal to 34.71% of the salaries paid to district court judges and supreme court justices — prior to this amendment, the amount was equal to 31% of such salaries. Note that this requirement for the increased payment by the State to the fund was effective July 1,1991.
Section 3, contained the amendment that upon retirement from service the State annuity plus the member’s annuity will provide a total retirement allowance of 3 1/3% per year of a judge’s final salary for the first 15 years’ service and 1.785% per year for each year’s service after 15 years. Prior to its amendment, the amount after 15 years was 1%. This Section 3 is stated to become effective July 1,1991, and is the primary section at issue in this case.
Section 4, provides for amendments in § 25-1-201, MCA, which provides that of the fee for filing a petition for dissolution of marriage, $35 must be remitted to the State to be deposited as provided in § 19-5-404, MCA; and further provides that the fee for filing a motion for substitution of judge must be remitted to the State to be deposited as provided in § 19-5-404, MCA. Again note that this Section 4 took effect on July 1, 1989, so those fees were remitted to the State following that date.
Section 5, provides as follows:
Review of actuarial valuation. The public employees retirement board shall provide to the 52nd legislature, by January 10, 1991, a copy of the most current actuarial valuation of the judges’ retirement system. The legislature shall review the actuarial soundness of the judges’ retirement system, and the 52nd legislature may eliminate or modify the effect of [this act].
*515 Section 5 also became effective July 1, 1989. I emphasize that the 52nd Legislature in 1991 did not eliminate or modify the effect of Chapter 664.
Section 6, pertains to rule-making authority which is not pertinent here.
Section 7, provided:
Effective dates. (1) Except as provided in subsection (2), [this act] is effective July 1, 1989.
(2) [Sections 2 and 3] are effective July 1, 1991.
In substance this provides that the Act is effective July 1,1989, with the exception of Sections 2 and 3 which are effective July 1,1991.
The opinion concludes that as of the effective date of July 1,1991, Section 3 of the Act provides an increased retirement benefit to judges with more than 15 years’ service “upon retirement from service.” The opinion then concludes that the plain meaning of the statutory language is that a member is entitled to the increased benefits upon retirement from service on or after July 1, 1991. The opinion concludes that the foregoing is the plain, clear and unambiguous language expressed by the legislature as to its intent and permits no further interpretation. I do not agree with that analysis.
When Chapter 664 is considered in its entirety, it explains the reason for the different effective dates. In its reallocation of district court fees to maintain actuarial soundness, Section 5 provided that the Retirement Board should provide to the legislature a current actuarial valuation of the retirement system and specifically required that the legislature review the actuarial soundness and granted to the 1991 Legislature the right to eliminate or modify the effect of this Act. Note that the additional fees were collected for retirement fund purposes commencing July 1,1989, so that such fund payments were made for two years. I note here that the figures contained in Chief Justice Tumage’s dissent show that the June 30,1988 figures, which would have been available to the 1989 Legislature, demonstrated net assets available of $10,206,825. The 1991 Legislature would have had available the June 30, 1990 figures, which showed net assets available of $12,941,902, an increase of over $2,700,000 in two years. On its face this suggests the actuarial soundness of the fund and demonstrates a reason for the 1991 Legislature not eliminating or modifying the effect of Chapter 664.
The opinion concludes that the plain meaning of the statutory language is that a judge is entitled to increased benefits only if he *516 retired from service on or after July 1,1991. In substance, that seems to be a conclusion that Section 3 of the Act had absolutely no effect until July 1, 1991.1 cannot agree with such a conclusion. Section 3, with its provision of 1.785% per year for each year’s service after 15 years, was enacted and in effect from and after May 12, 1989. I conclude that the entire Chapter 664 as enacted and approved by May 12.1989, was in effect from and after that date and has not been either amended or eliminated.
The opinion then reaches the following conclusion with which I emphatically disagree:
The terms of Gulbrandson’s retirement benefit contract are determined pursuant to the statutes in effect at the time of his retirement on August 31, 1989. The amendment to § 19-5-502, MCA, via Section 3, Chapter 664, was not yet effective on that date. Therefore, we conclude that Gulbrandson’s contract does not include the increased retirement benefit contained in Section 3, Chapter 664 and, as a result, his contract was not impaired by denying him entitlement to that increased benefit.
I agree with the opinion in its statement that the terms of Gulbrandson’s retirement benefit contract are determined pursuant to the statutes in effect at the time of his retirement on August 31, 1989 — the critical question becomes whether or not Chapter 664, which had been enacted in its entirety and approved by May 12,1989, could be considered as being in effect in its entirety. In substancec the conclusion of the opinion is that the including of Section 3 of Chapter 664, had absolutely no effect until July 1, 1991.1 do not agree with that analysis. Chapter 664 rebuts the opinion’s conclusion as it places in effect two charges in the form of fees which are to be paid to the State and remitted by the State into the Retirement Fund for ultimate payment to the judges.
In applying a contract law theory to the contract between Gulbrandson and the State upon his retirement on August 31, 1989, I conclude that the entire Chapter 664 as enacted and approved by May 12.1989, became a part of that contract. He had the right to rely upon this contact and to the benefits thereof when he retired August 31, 1989. Gulbrandson of course became subject to the express terms of Section 3, which provided that the additional .785% would not be payable prior to July 1, 1991.
I would therefore answer the certified question of the United States District Court by concluding that the benefit increase provided *517 in Chapter 664 provides its benefit to Gulbrandson from and after July 1, 1991.